UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRED REEVES,

    Plaintiff,

v.                                                             Case No. 2:05-cv-169
                                                              HON. RICHARD ALAN ENSLEN

SANDRA MONROE, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Fred Reeves, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections (MDOC). In his original complaint, Plaintiff named Defendants Nurse Sandra Monroe, Health Unit Manager Ruby Cheatham, Medical Doctor Badawi M. Abdellatif, and Warden David Bergh, all of whom were employed at the Alger Maximum Correctional Facility (LMF) during the pertinent time period.

On February 8, 2006, Plaintiff filed an amended complaint (docket #32) in which he added Defendants Deputy Warden Cathy Bauman, Nurse Nancy Blackford, Resident Unit Officer Unknown Clapp, Corrections Officer Unknown Dahlstrom, Corrections Officers Unknown Parties named as John Does #1, #2, #3 and #4, Resident Unit Officer Unknown Ferguson, Corrections Officer Norm Flurey, Nurse Mary Hite, Corrections Officer B. Hursh, Corrections Officer Kelly Johnson, Assistant Resident Unit Manager D. McBurney, Resident Unit Officer Unknown Miron, Corrections Officer Unknown Phillipson, Deputy Warden Lloyd Rapelje, Nurse Karen Schaeffer,

Corrections Officer Unknown Thompson, and Resident Unit Officer Unknown Tweedale, all of whom were employed at LMF during that pertinent time period.

In Plaintiff's original complaint, he alleges that on June 1, 2005, Defendant Monroe delivered some of his medication, but refused to give Plaintiff his nitro patch and pain pill. When Plaintiff requested his nitro patch and pain pill, Defendant Monroe stated that Plaintiff had nothing else coming until he dropped his lawsuit against Dr. Engelsjerd. Plaintiff gave her his empty pill bottle and a health care kite requesting a refill, but Defendant Monroe refused to turn in the kite or to notify health care of Plaintiff's need for new medications. Plaintiff then asked Defendant Monroe about his scheduled call out to see the nurse and she said that he had nothing coming and would be allowed to die first. Defendant Monroe told Plaintiff that he was refusing his nitro patch and pain pills. Plaintiff then asked Defendant Phillipson, who was present, to get the sergeant, but Defendant Phillipson refused. Plaintiff later asked for assistance from Defendant McBurney, who told him that there was nothing he could do.

On June 2, 2005, Defendant Monroe came to Plaintiff's cell to pass out meds. She gave Plaintiff one Prilosec, one Tylenol, and an empty nitro patch package. When Plaintiff requested the rest of his blood pressure and heart medications, Defendant Monroe asked Plaintiff if he was ready to drop the lawsuit against Dr. Engelsgjerd. When Plaintiff replied that he was not, she stated, "we'll see how long you can go without your meds." When Plaintiff threatened to write her up, Defendant Monroe said that administration would only believe what was in his medical file. On June 6, 2005, Plaintiff notified Defendant Monroe that he was in distress and needed nitro pills, but Defendant Monroe refused to help and walked away laughing. Plaintiff claims that he complained to Defendants Cheatham, Abdellatif and Bergh, who allowed Defendant Monroe to continue denying Plaintiff his medications.

In Plaintiff's amended complaint (docket #32), he alleges that on June 2, 2005, after he refused to discontinue his litigation, Defendants Miron and Tweedale ordered Plaintiff to pack up his property because his "black ass" was going to be moved to another unit. Plaintiff claims that the cell that he was moved to was filthy and caused him to suffer from breathing problems. Defendants Miron and Tweedale said "lets see how much legal work you get done over here." The noise level on C-Wing was high and Plaintiff was forced to use his inhalers more often. Defendants Tweedale, Miron and McBurney denied Plaintiff's request for cleaning supplies. In addition, Plaintiff claims that Defendant Monroe refused to give him his heart and blood pressure pills from July 22, 2005, until July 25, 2005. As a result, Plaintiff became ill and on July 24, 2005, he had to be transported to the hospital for treatment. On July 25, 2005, Defendant Monroe again refused to give Plaintiff his heart and blood pressure medication, stating that Plaintiff should have died on the previous day and that she wanted to see how long it would take. Plaintiff contends that Defendants Bergh, Rapelje, Cheatham, Scheaffer and Abdellatif had all been previously notified of Defendant Monroe's conduct, but refused to protect Plaintiff from her retaliatory behavior.

In Plaintiff's amended complaint, he further alleges that on the morning of October 6, 2005, Defendant Monroe asked Plaintiff if he wanted to attend his scheduled health care call out, and Plaintiff said "yes." Defendant Monroe then stated, "I will take that as a refusal." Plaintiff told Defendant Monroe that he did not refuse and that he was in pain. Plaintiff later told Defendant Scheaffer about the incident, but she merely looked at Plaintiff and walked away, leaving him in pain and bleeding.

On October 19, 2005, Plaintiff was called out to health care for blood work. When Plaintiff asked what the blood work was for, Defendant Monroe told him that it was because he had gone to the hospital. When Plaintiff asked for a more specific answer, Defendant Monroe told him

that it was for "electrolytes" and advised him not to ask any more questions. Plaintiff stated that he could ask whatever he wished about his health and Defendant Monroe told the escorting officer to take Plaintiff back to his cell. Plaintiff refused to leave health care until his blood was drawn and Defendant Monroe screamed at Defendants Johnson and Flurey[1] to "beat that nigger's ass and get him out of here." Defendant Monroe then pulled out her personal protection device and called for more officers. Defendants Johnson and Flurey began to push and twist Plaintiff's hands and arms, which were confined in shackles. Defendant Monroe hit Plaintiff between his legs and Defendants Ferguson, Hursh, Johnson, Phillipson, Maynard and John and Jane Does grabbed Plaintiff's neck and twisted his back and arms. Due to the stress, Plaintiff began experiencing heart pains and requested medical assistance. Plaintiff's request for a nitro pill was denied. Defendant Flurey then came to Plaintiff's cell and told Plaintiff that because he wanted to harass the nurse with lawsuits and call her a bitch, he had something for Plaintiff. Defendant Flurey then said, "Reeves said he's going to hurt himself." Defendant Hursh came to Plaintiff's cell and said that he had just seen Plaintiff take his bottle of nitro pills. Defendant Monroe came to Plaintiff's cell and asked him if he was going to hurt himself. When Plaintiff said "no," Defendant Monroe stated, "You're going on bam bam for a long time lets see how much writing you do over there." Plaintiff was accused of swallowing a bottle of nitro pills and threatening to hurt himself, and was placed on suicide watch after being stripped down to his underwear. Approximately one hour later, Psychologist Paul A. Eyke released Plaintiff from suicide status. Plaintiff was then forced to walk back to his cell in the freezing cold in nothing but a blue gown. Plaintiff claims that he suffers from constant pain as a result of being assaulted.

---

[1]Plaintiff spells this Defendant's last name both Fleury and Flurey. The court assumes that Plaintiff is referring to the same individual.

Plaintiff contends that on October 21, 2005, Defendant Hite pricked her finger with a needle, wiped her blood on the needle and stuck Plaintiff with the contaminated needle. Defendant Hite dripped blood on Plaintiff's shirt during this incident. Defendant Hite later told Plaintiff that she had AIDS and that he was going to die with her.

The undersigned notes that Plaintiff has now filed a second motion to file an amended complaint, as well as a proposed amended complaint (docket #110), in which he seeks to add Region #1 Health Care Administrator Terry Malloy, Corrections Officer Steve Adams, Sergeant Belusar, Sergeant Keith Castello, Assistant Resident Unit Supervisor Denise Gerth, Assistant Resident Unit Manager Tim Bott and Unknown Parties John Doe #5 and John Doe #6 as Defendants. In addition, Plaintiff seeks to maintain his claims against Defendants Monroe, Cheatham, Bergh, Ferguson, Clapp, Dahlstrom, Fleury[2], Johnson, Phillipson, Thompson, John Does #1-#4, Blackford, Hite, Scheaffer, Hursh and Rapelje. Furthermore, Plaintiff now seeks to drop his claims against Defendants Bauman, McBurney, Miron and Tweedale.

Plaintiff claims that Defendants' actions violated his rights under the First and Eighth Amendments to the United States Constitution. Plaintiff is seeking compensatory and punitive damages, as well as equitable relief.

Presently before the Court is the Defendants' Motions to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and for revocation of *in forma pauperis* status (docket #72, #82, #100) and Plaintiff's motions to compel and to amend (docket #104 and #110). Plaintiff and Defendants have filed responses to the various motions and the matter is ready for decision.

---

[2]Previously referred to by Plaintiff as Norman Flurey.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading, requiring the court to determine whether the plaintiff would be entitled to relief if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle [the plaintiff] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court must construe the complaint in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A judge may not dismiss the complaint simply because he disbelieves the complaint's factual allegations. *Conley*, 355 U.S. at 47.

Generally, a complaint need only give "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *In re Delorean Motor Co. v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (*quoting Conley*, 355 U.S. at 47). The fundamental purpose of pleadings under the Federal Rules of Civil Procedure is to give adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. *Mayer*, 355 U.S. at 638. While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *Delorean*, 991 F.2d at 1240. "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (internal quote omitted).

In addition, because Defendants have asked that the Court consider evidentiary materials beyond the pleadings in their motion to revoke *in forma pauperis* status, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b). Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

With regard to Plaintiff's second motion to amend his complaint (docket #110), Defendants claim that Plaintiff has not shown that justice requires that he be granted leave to amend his complaint. Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*,

53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996). Where discovery was closed, and the plaintiff requested to add new causes of action and new parties, without explanation for the delay in bringing the motion to amend the complaint, it was not an abuse of discretion to deny the plaintiff's motion to amend. *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992).

As noted above, in Plaintiff's proposed second amended complaint, he seeks to add new parties and claims, including claims against Region #1 Health Care Administrator Terry Malloy, Corrections Officer Steve Adams, Sergeant Belusar, Sergeant Keith Castello, Assistant Resident Unit Supervisor Denise Gerth, Assistant Resident Unit Manager Tim Bott and Unknown Parties John Doe #5 and John Doe #6. However, in Plaintiff's motion, he fails to offer any explanation for his failure to include the asserted amendments in his prior amended complaint. The undersigned notes that the majority of the new claims arose prior to the date he filed his first motion to amend. In addition, these claims mainly involve the failure to act, rather than affirmative acts. Defendants have already filed numerous pleadings in reliance upon Plaintiff's original and amended complaint, including motions to revoke pauper status and to dismiss. Therefore, because Plaintiff has not shown that justice requires that he be granted leave to amend his complaint, the undersigned recommends that the court deny Plaintiff's motion (docket #110). *Caldwell*, 968 F.2d at 599.

With regard to Defendants' motions to revoke *in forma pauperis* status (docket #82 and #100), the undersigned recommends that the court deny the motions. As noted by Defendants, there is no dispute that Plaintiff has had at least "three strikes" prior to filing the original complaint in this action on July 15, 2005. Plaintiff acknowledged this fact, but claimed that he was in "imminent danger" because he was being denied his medications. Defendants contend that Plaintiff does not fit within the imminent danger exception to the three strikes rule because he was being offered his medications as shown by medication administration record for July of 2005. According

- 8 -

to the record (docket #83, Exhibit A), when the nurse attempted to give Plaintiff his medications on July 9, 10, 12, 13, and 14 of 2005, he refused to answer the nurse or come to the door. These entries were initialed by Defendant Monroe. The record further shows that Plaintiff received his medications on July 15-21 of 2005, and refused his medications on July 22-25 of 2005.

In response to the motions to revoke pauper status, Plaintiff states that he never refused medications, except for a Motrin which had been dropped on the floor by Defendant Monroe. Plaintiff claims that Defendant Monroe falsified the medication administration record to make it appear as if he was offered his medications each day. As noted above, Plaintiff claims that on June 1, 2005, he asked Defendant Monroe about his scheduled call out to see the nurse and was told that he had nothing coming and would be allowed to die first. Defendant Monroe told Plaintiff that he was "refusing" his nitro patch and pain pills. Plaintiff claims that on June 2, 2005, Defendant Monroe stated "we'll see how long you can go without your meds," and told Plaintiff that administration would only believe what was in his medical file. In addition, Plaintiff alleges that Defendant Monroe refused to give him his blood pressure and heart medications on June 2, 2005, and his nitro pills on June 6, 2005. Plaintiff also claims that Defendant Monroe refused to give him his heart and blood pressure medication from July 22, 2005, until July 25, 2005, and that he was hospitalized on July 24, 2005, as a result. Throughout Plaintiff's pleadings, he asserts that Defendant Monroe falsified his medical record to cover up the fact that he was being denied his medication. Therefore, there appears to be an issue of fact regarding whether Plaintiff was denied medication to the detriment of his health.

Defendants also offer a video tape which shows Plaintiff arguing with the nurse about whether he was receiving all of his medications on March 2, 3, and 5 of 2006. Defendants claim that the videotape supports a finding that Plaintiff was either given his medications or refused them when

offered. However, because the video tape shows conduct which occurred in March of 2006, it has no bearing on whether Plaintiff was in imminent danger at the time he filed his lawsuit. The undersigned concludes that Defendants have failed to meet their burden of showing that Plaintiff was not in imminent danger at the time that he filed his lawsuit. Therefore, the undersigned recommends that the court deny Defendants' motions to revoke pauper status (docket #82 and #100). Moreover, should the court adopt the undersigned's recommendation regarding the motions to revoke pauper status, Plaintiff's motion to compel Defendants to allow him to view the videotape (docket #104) should be dismissed as moot.

Finally, Defendants have filed a motion to dismiss Plaintiff's complaint because he failed to comply with an injunction issued against him in *Reeves v. Smith*, 4:03-cv-50, slip op at 3-4 (W.D. Mich. Mar. 31, 2004), and because he failed to comply with the total exhaustion rule. In *Reeves v. Smith*, 4:03-cv-50, the court issued the following injunction against Plaintiff:

> [A]n injunction is issued against plaintiff with regard to all future lawsuits filed in this court (or initially filed in the United States District Court for the Eastern District of Michigan and transferred to this court) requiring plaintiff, upon pain of dismissal: (1) to utilize the court-approved form for prisoner civil rights complaints and complete all sections of that form; (2) to limit any supplement to the complaint form to no more than three single-sided sheets of paper containing legibly written factual allegations; (3) to limit his complaint to claims arising out of a common nucleus of fact; (4) to attach to his complaint only those exhibits necessary to demonstrate exhaustion of the claims asserted in the complaint against each named defendant and not exhibits relating to the merits of the claim; and (5) to preclude plaintiff from supplementing or amending his complaint in any future case without having first obtained leave of court, with a brief in support of any application for leave to amend showing that each proposed claim is exhausted as to each defendant and detailing how the proposed amendment arises out of the same nucleus of fact, why leave should be granted to add claims and/or parties, and plaintiff must attach to his brief a copy of the proposed amended complaint.

(*See Reeves v. Smith*, 4:03-cv-50, docket #233.)

Defendants claim that Plaintiff's complaint covers a sequence of unrelated events that do not arise out of a common nucleus of fact. Defendants note that in Plaintiff's complaint, he alleges that he was denied medications on various dates in June and July of 2005, and in his amended complaint, Plaintiff claims that Defendant Monroe denied him his medications on October 6, 2005, refused to answer his questions regarding his medical condition and doctor ordered blood tests on October 19, 2005, and was deliberately stuck with a contaminated needle on October 21, 2005. However, as noted previously by the court, Plaintiff claims that each instance of misconduct occurred because of a desire to retaliate against him for filing a lawsuit against Dr. Engelsgjerd. Plaintiff further asserts that each instance of misconduct was done in an attempt to convince Plaintiff to drop the lawsuit.

The undersigned notes that the court recently addressed a similar complaint filed by this Plaintiff in *Reeves v. Greenfield*, No. 5:04-cv-193, 2006 WL 897130 (W.D. Mich. Apr. 5, 2006). In *Reeves v. Greenfield*, the magistrate judge recommended that the court dismiss Plaintiff's complaint on the ground that the complaint set out various unrelated claims that occurred over a ten month period and involved an assortment of corrections officers. The magistrate judge concluded that Plaintiff's allegation that the events were all triggered by the retaliatory motives of various corrections officers was insufficient to demonstrate a common nucleus of fact. *Id.* at 2006 WL 897130, *2. In reviewing the report and recommendation, the court held:

> Plaintiff's complaint and affidavit set out a claim that arises out of a common nucleus of fact and thus complies with this Court's injunction. First, Plaintiff does not set out various unrelated claims in his complaint and affidavit. Rather, he presents only one claim: namely, that he was retaliated against for engaging in protected conduct. Second, the fact that the alleged retaliatory acts occurred over a ten-month period and involved a number of corrections officers does not lead to the conclusion that Plaintiff's complaint involves claims that do not arise out of a common nucleus of fact.

> The acts committed by the defendants were all done, allegedly, in retaliation for Plaintiff having filed a lawsuit on April 8, 2003, against fifty-one ICF staff members. Plaintiff is not expected to break this claim into separate causes of action against each individual defendant for each individual act of retaliation. It was not the purpose of the injunction to create this result; rather, the injunction was issued to remedy the problem faced by this Court of being confronted with an extraordinary number or unrelated claims. That does not exist here.

*Id.*, 2006 WL 897130, *2.

As noted above, Plaintiff claims that the Defendants' misconduct in this case was motivated by a desire to retaliate against him for filing a lawsuit on Dr. Engelsgjerd. As noted by the court in *Reeves v. Greenfield*, Plaintiff is not expected to break this claim into separate causes of action against each individual defendant for each individual act of retaliation. *Id.* Therefore, it is the opinion of the undersigned that Defendants' claim regarding the alleged violation of the injunction lacks merit.

Defendants also claim that they are entitled to dismissal of this action pursuant to the total exhaustion rule. A review of the record indicates that Plaintiff appears to have exhausted his administrative remedies with regard to all of the defendants, except for Defendants Bauman, Dahlstrom and Ferguson. However, the Sixth Circuit recently decided *Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006), which addressed the issue of whether the PLRA requires total exhaustion in cases involving "mixed" complaints. In *Spencer*, the Sixth Circuit held that it had addressed this situation in *Hartsfield v. Vidor,* 199 F.3d 305 (6th Cir. 1999), where a prisoner had exhausted his claims against three defendants but had failed to exhaust his claims against two others. The Sixth Circuit noted that, in *Hartsfield*, it had dismissed without prejudice the unexhausted claims and reached the merits of the exhausted claims. *Spencer*, 449 F.3d at 726. The Court noted that it would have been unable to reach the merits of the exhausted claims under a total-exhaustion regime, so a

holding that a prisoner's exhausted claims survive the dismissal of any unexhausted claims was necessary to the result in *Hartsfield. Id.*

The *Spencer* panel then addressed the Sixth Circuit's opinions in *Jones Bey v. Johnson*, *et al.*, 407 F.3d 801, 805 (6th Cir. 2005), *petition for cert. filed,*74 U.S.L.W. 3424 (U.S. Jan. 9, 2006) (No. 05-874), and *Rinard v. Luoma,* 440 F.3d 361, 363 (6th Cir. 2006). The *Spencer* court noted:

> A panel of this court recently seized upon the implicit nature of this holding in deeming the issue "an open question in this circuit" even after *Hartsfield. Bey v. Johnson,* 407 F.3d 801, 805 (6th Cir. 2005), *petition for cert. filed,*74 U.S.L.W. 3424 (U.S. Jan. 9, 2006) (No. 05-874). It then purported to "definitively answer" the question by requiring the total dismissal of mixed complaints. *Id.; accord Rinard v. Luoma,* 440 F.3d 361, 363 (6th Cir. 2006). The *Bey* panel was apparently unaware, however, that we had already explicitly reaffirmed *Hartsfield*'s implicit partial-exhaustion holding *two years before Bey* was decided. In *Burton v. Jones,* we explained that "the *Hartsfield* holding illustrates that a prisoner's lawsuit, which alleges multiple claims against multiple defendants, is not vulnerable to dismissal under § 1997e(a) simply because the prisoner has failed to exhaust a particular claim as to a specific defendant."321 F.3d at 574 n. 2. In other words, there was no need for *Bey* to "definitively answer" the question, as *Hartsfield* and *Burton,* taken together, had already done so.

*Spencer*, 449 F.3d at 726. The *Spencer* court noted that although the United States Supreme Court has granted certiorari to resolve the total-exhaustion question in *Williams v. Overton*, __ U.S. __, 126 S. Ct. 1463 (2006) and *Jones v. Bock*, __ U.S. __, 126 S. Ct. 1462 (2006), it had an obligation to decide the cases currently before it. The Court stated that "[b]ecause *Hartsfield* and *Burton* were decided before *Bey,*" the partial-exhaustion rule is necessarily the law of the Sixth Circuit. *Id.*

Because this Court is bound by the most recent decision of the Sixth Circuit on the total exhaustion question, the undersigned recommends that the Court follow *Spencer*'s partial exhaustion rule until the issue is resolved by the United States Supreme Court. Therefore, the

undersigned recommends that Defendants' motion to dismiss for failure to exhaust administrative remedies be granted, in part, and that only Defendants Bauman, Dahlstrom and Ferguson be dismissed.

For the reasons set forth above, it is recommended that Defendants' motion to dismiss (docket #72) be denied, in part, and granted with regard to Defendants Bauman, Dahlstrom and Ferguson. In addition, it is recommended that Defendants' motions to revoke pauper status (docket #82 and #100) and Plaintiff's motion to compel and second motion to amend his complaint (docket #104 and #110) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

       /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: August 8, 2006